Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

Raul Perez (SBN 174687)
RPerez@InitiativeLegal.com
Gene Williams (SBN 211390)
GWilliams@InitiativeLegal.com
Arnab Banerjee (SBN 252618)
ABanjeree@InitiativeLegal.com
INITIATIVE LEGAL GROUP APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

Attorneys for Plaintiffs
James Collins, Matthew Proctor, and Danoby Ortiz

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES COLLINS, MATTHEW PROCTOR, and DANOBY ORTIZ, individually, and on behalf of other members of the general public similarly situated,<br><br>      Plaintiffs,<br><br>      vs.<br><br>GAMESTOP CORP., a Delaware corporation; and GAMESTOP.COM, INC, a Delaware Corporation,<br><br>      Defendants. | Case No.: 3:10-cv-01210-TEH (EDL)<br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: September 17, 2012<br>Time: 10:00 a.m.<br>Location: Courtroom 2<br><br>Judge: Hon. Thelton E. Henderson<br>Magistrate: Hon. Elizabeth D. Laporte<br>Magistrate: Hon. Maria-Elena James (Settlement)<br><br>Complaint Filed: March 23, 2010<br>Trial Date: June 5, 2012 |

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 17, 2012 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Thelton E. Henderson presiding, Plaintiffs James Collins, Matthew Proctor, and Danoby Ortiz ("Plaintiffs") will, and hereby do, move this Court for entry of an order awarding attorneys' fees and costs in the amount of $250,000 to Baron & Budd, P.C. and Initiative Legal Group APC (collectively "Class Counsel"). This Motion is unopposed by Defendants Gamestop Corp. and Gamestop.com, Inc. ("Defendants").

This Motion should be granted because the requested fees and costs are fair and reasonable under California law based upon the work performed and the results obtained and public policy provides that if competent counsel are to be attracted to litigate cases on behalf of clients unable to pay hourly fees, attorney fee awards must be made in recognition of the risks inherent in contingent fee agreements.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees and Costs; (3) the Declaration of Roland Tellis; (4) the Declaration of Mark Pifko; (5) the Declaration of G. Arthur Meneses; (6) the records, pleadings, and papers filed in this action; and (7) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing of this Motion.

Dated: June 13, 2012

INITIATIVE LEGAL GROUP APC

By: _____

Raul Perez
Gene Williams
Arnab Banerjee

BARON & BUDD, P.C.
Roland Tellis
Mark Pifko

Attorneys for Plaintiffs James
Collins, Matthew Proctor, and
Danoby Ortiz

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................... 1

II.  ARGUMENT ............................................................................ 3

    A.   Plaintiffs' Fee Application Is Governed By California Law ................. 3

    B.   California Law Entitles Plaintiffs to A Fee Award Under the
        Consumers Legal Remedies Act and Private Attorneys General
        Statute .................................................................................. 3

        1.   The Consumers Legal Remedies Act Provides for Attorneys'
            Fees ............................................................................. 3

        2.   The Private Attorneys General Statute Provides for
            Attorneys' Fees ............................................................. 5

    C.   California Law Prescribes a Lodestar/Multiplier Method of
        Calculating a Reasonable Fee. ................................................... 7

    D.   Class Counsel's Lodestar Is Reasonable and Should Be Approved ...... 8

    E.   Additional Factors Under California Law Support Awarding the
        Agreed-Upon Class Counsel Fee Award ...................................... 12

        1.   California Case Law Authorizes Courts to Consider
            Additional Factors in Determining the Reasonableness of a
            Fee Request ................................................................. 12

        2.   The Attorneys' Fees Are Supported by the Complexity of the
            Litigation and the Risk Assumed by Class Counsel ................... 12

        3.   The Attorneys' Fees Are Supported by Class Counsel's
            Representing the Class on a Contingency Basis ......................... 14

        4.   The Attorneys' Fees Are Supported by the Results Achieved
            on Behalf of the Class ..................................................... 15

        5.   The Attorneys' Fees Are Supported by Class Counsel's
            Experience, Reputation, and Skill ....................................... 16

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

F.   The Requested Award of Attorneys' Fees Is Supported by Class

Counsel's Significant Investment of Time and Resources in the

Action.................................................................................................. 20

G.   The Requested Class Counsel Cost Recovery Is Reasonable and

Should Receive Final Approval .......................................................... 22

III.   CONCLUSION.......................................................................................... 22

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

MOTION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Nextel Retail Stores, LLC* (C.D. Cal. Case No. 07-4480) ................. 9

*Barrera v. Gamestop Corp.* (C.D. Cal. Case No. 09-01399)............................... 9

*Brad Aarons et al. v. BMW of North America, LLC et al.* (C.D. Cal.
    Case No. 11-07667) ................................................... 18, 19

*Burrows v. Combined Ins. Co. of Am.* (E.D. Cal. No. 08-01752) ........................ 9

*Chemical Bank v. City of Seattle*, 19 F.3d 1291 (9th Cir. 1994) ....................... 15

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ................................. 7

*Clark v. NeilMed Pharmaceuticals* (S.D. Cal. Case No. 10-01453)................... 18

*Dehoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ........................... 2

*Delacruz v. Cytosport, Inc.* (N.D. Cal. Case No. 11-03532) ............................. 19

*Faigman v. AT&T Mobility LLC*, 2011 U.S. Dist. LEXIS 15825
    (N.D. Cal. Feb. 15, 2011)................................................. 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................. 2

*Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997)................................... 3

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)................................... 2, 4

*In re Alexia Foods, Inc. Litigation* (N.D. Cal. Case No. 11-06119)............. 18, 19

*In Re Brazilian Blowout Litigation* (C.D. Cal. Case No. 10-08452) ................. 18

*In re Larry's Apartment, L.L.C.*, 249 F.3d 832 (9th Cir. 2001)........................... 3

*In re Light Cigarettes Marketing and Sales Practices. Litig.*, 652 F.
    Supp. 2d 1379 (MDL No. 2068) .................................... 19

*In re Nvidia Derivatives Litigation*, 2009 U.S. Dist. LEXIS 24973
    (N.D.Cal. Dec. 22, 2008) ........................................ 14

*In re United Energy Corp. Sec. Litig.*, No. MDL 726, 1989 U.S. Dist.
    LEXIS 19146 (C.D. Cal. Mar. 9, 1989) ....................... 22

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ................................................................................................ 3

*Lobatz v. U.S. W. Cellular, Inc.*, 222 F.3d 1142 (9th Cir. 2000) .......................... 2

*Mangold v. California Public Utilities Commission*, 67 F.3d 1470 (9th Cir. 1995) ............................................................................... 3, 8

*Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008 (S.D. Cal. 2009) .............................................................................................. 19

*Padovani v. Citicorp Inv. Servs., Inc.* (C.D. Cal. Case No. 07-00113) ............... 10

*Simpson v. e*Trade* (C.D. Cal. Case No. 06-00156) ......................................... 10

*Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009) ................................. 19


**STATE CASES**

*Acheson v. Express LLC* (Santa Clara Super. Ct. No. 109CV135335) ................. 9

*Aguiar v. Cingular Wireless LLC et al.* (C.D. Cal. No. 05-02907) ..................... 9

*Berrymon v. St. Vincent Med. Ctr.* (L.A. Super. Ct. No. BC391114) ................. 10

*Brannon v. Midland Credit Mgmt., Inc.* (San Diego Super. Ct. No. GIC 864722) ....................................................................................... 10

*Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066 (1999) ................................. 4

*Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798 (2007) ......................................................................................................... 19

*Bussey v. Affleck*, 225 Cal. App. 3d 1162 (1990) ............................................... 22

*City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78 (1988) ....................... 8

*Cundiff v. Verizon Cal., Inc.*, 167 Cal. App. 4th 718 (2008) ............................. 12

*Edgerton v. State Pers. Bd.*, 83 Cal. App. 4th 1350 (2000) ................................. 8

*Ethridge v. Universal Health Servs.*, (L.A. Super. Ct. No. BC391958) ....................................................................................................... 9

*Fracasse v. Brent*, 6 Cal. 3d 784 (1972) ............................................................. 12

*Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140 (2006) ............... 4

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004)........................... 6, 14

*Gutierrez v. Lowe's HIW, Inc.* (Stanislaus County Super. Ct. No. 657474) (July 8, 2011) ..................................................................... 9

*In re Consumer Privacy Cases,* 175 Cal. App. 4th 545 (2009) ....................... 7, 8

*Ketchum v. Moses,* 24 Cal. 4th 1122 (2001)................................................ *passim*

*Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170 (2007)....................................................................................................... 4

*LaGaisse v. 20 20 Powervision* (Riverside Super. Ct. No. RIC 528973) ................................................................................................... 9

*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19 (2000) ....................... 12, 15

*Lyons v. Chinese Hospital Assn.*, 136 Cal. App. 4th 1331 (2006)....................... 6

*Mares v. BFS Retail & Commercial Operations, LLC* (L.A. Super. Ct. No. BC375967) ................................................................................. 10

*Maria P. v. Riles*, 43 Cal. 3d 1281 (1987).......................................................... 6

*Richard v. Ameri-Force Mgmt. Servs., Inc.* (San Diego Super. Ct., August 27, 2010, No. 37-2008-00096019) ..................................................... 9

*Ryan v. California Interscholastic Federation*, 94 Cal. App. 4th 1033 (2001)..................................................................................................... 6

*Serrano v. Priest*, 20 Cal. 3d 25 (1977)............................................................ 12

*Sunio v. Marsh* (L.A. Super. Ct. No. BC328782).............................................. 10

*Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224 (2001) .......................... 8

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(h)............................................................................................ 3

**STATE STATUTES**

Cal. Civ. Code § 1780 .......................................................................................... 1

Cal. Civ. Code § 1780(e)...................................................................................... 3

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

MOTION FOR ATTORNEYS' FEES AND COSTS

Cal. Code Civ. Proc. § 1021.5 ........................................................................... 1, 5

MOTION FOR ATTORNEYS' FEES AND COSTS

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs James Collins, Matthew Proctor, and Danoby Ortiz ("Plaintiffs" or "Class Representatives") move for an award of attorneys' fees and costs of $250,000 to Baron & Budd, P.C. ("B&B") and Initiative Legal Group APC ("Initiative") (collectively "Class Counsel").

Under California law, which governs (1) the right to a fee in this diversity case and (2) the method of calculating that fee, Plaintiffs are entitled to an award of attorneys' fees under two fee-shifting statutes:  the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1780, and the private attorneys general statute, Cal. Code Civ. Proc. § 1021.5.  California uses a two-step method to calculate the appropriate amount of the fee.  First, the Court calculates the lodestar value of Class Counsel's time by multiplying the hours reasonably spent litigating the case by prevailing hourly rates for attorneys' of similar skill and experience.  Second, the Court may adjust the lodestar upward or downward, by applying a multiplier to the lodestar figure, to take into account the contingency risk associated with the case, delay in payment, and the result achieved for class members, among other things.

Applying Class Counsel's customary hourly rates (which are commensurate with the prevailing rates charged by law firms that practice complex class action litigation on a non-contingent basis) to the 1287 hours Class Counsel spent representing class members yields a lodestar value of $655,213.

In addition to Class Counsel's lodestar,  Plaintiffs' request is also justified by the following factors:  (1) the salient risks assumed by Class Counsel, who allocated more than 1287 hours of their time and nearly $28,789 of their reserved funds to the case, none of which would have been recoverable if this case were lost; (2) the fact that Class Counsel were precluded from taking other cases due

to the attention and commitment that the litigation required; (3) Class Counsel's achievement in obtaining an effective resolution of the controversy; (4) the novelty, difficulties, and complexities of the litigation; (5) the public service performed by Class Counsel by enforcing consumer protection laws; and (6) the fact that Class Members were duly informed of Plaintiffs' requests for incentive awards and attorneys' fees and costs, and that, to Class Counsel's knowledge, no Class Member has yet objected to either request or to any other aspect of the Settlement.

Pursuant to the terms of the Settlement Agreement and General Release ("Settlement Agreement" or "Settlement"), Defendants Gamestop Corp. and Gamestop.com, Inc. (collectively, "Defendants" or "Gamestop") (collectively with Plaintiffs, the "Parties") have agreed not to oppose Plaintiffs' request for attorneys' fees and costs in an amount not to exceed $250,000. (Settlement Agreement ¶ D(1).) Courts have encouraged litigants to resolve fee issues by agreement if possible. *Lobatz v. U.S. W. Cellular, Inc.*, 222 F.3d 1142, 1149-50 (9th Cir. 2000) (affirming award of fees and expenses to be paid separate from class action settlement where defendant agreed not to oppose request up to negotiated amount); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (upholding $5.2 million attorneys' fees and costs negotiated by the parties after settlement of class relief); *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 322-23 (W.D. Tex. 2007) (awarding $11.72 million in attorneys' fees and expenses negotiated by the parties). As the Supreme Court has explained, "[a] request for attorneys' fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "Ideally, of course, litigants will settle the amount of a fee." *Id.* Other courts have echoed the Supreme Court's encouragement:

> In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandably, sympathetically, and professionally arrive at a settlement

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

as to attorneys' fees. Although a settlement generally leaves every litigant partially dissatisfied, so does a judicial award for attorneys' fees.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974)

Accordingly, this Motion should be granted in its entirety.

## II.   ARGUMENT

### A.   Plaintiffs' Fee Application Is Governed By California Law

At the conclusion of a successful class action, class counsel may apply to the Court for an award of reasonable attorneys' fees. *See* Fed. R. Civ. P. 23(h). The first issue in assessing any fee application is to identify the governing law. Here, California law governs Plaintiffs' request for attorneys' fees. *See*, *e.g.*, *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837-38 (9th Cir. 2001) (holding that, in a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorneys' fees, and the procedure for requesting an award of attorneys' fees is governed by federal law); *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997) (a federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees.); *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("[t]he method of calculating a fee is an inherent part of the substantive right to the fee itself, and a state right to an attorneys' fee reflects a substantial policy of the state.").

### B.   California Law Entitles Plaintiffs To A Fee Award Under The Consumers Legal Remedies Act and Private Attorneys General Statute

#### 1.   The Consumers Legal Remedies Act Provides for Attorneys' Fees

Under California law, "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to [the CLRA]." Cal. Civ. Code § 1780(e). "[A]n award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

is resolved by a pre-trial settlement agreement." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-79 (2007). This effectuates a crucial policy goal of the State: "[T]he availability of costs and attorneys fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute." *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1085 (1999).

California courts have adopted two approaches to determining prevailing party status—each of which is satisfied here. The first approach borrows from Code of Civil Procedure section 1032, finding that a plaintiff is a prevailing party if he or she obtained a "net monetary recovery." *Kim*, 149 Cal. App. 4th at 179. Under the Settlement, Gamestop is obligated to pay claimants either (1) a $10 payment and a $5 store credit or (2) a $5 payment and a $10 store credit. (Settlement Agreement ¶ 1(a)-(b)). Plaintiffs and Class Members have thus achieved a net monetary recovery through their settled CLRA claims and are "prevailing plaintiffs" entitled to a fee award under the CLRA.

The second approach for determining prevailing party status under the CLRA is a "pragmatic approach," which analyzes "which party realized its litigation objectives." *Kim*, 149 Cal. App. 4th at 179; *see Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 153 (2006) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) ("[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.")

Plaintiffs are prevailing parties under the pragmatic approach as well. Plaintiffs brought this action alleging that Gamestop profited from unlawful, deceptive, and misleading business practices and sought compensatory damages and prospective relief for all Class Members and members of the public. (*See* Second Amended Complaint, Doc. 63, ¶¶ 64-98.) Under the settlement, Class

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

Members can elect to receive (1) a $10 payment and a $5 GameStop store credit towards the purchase of a used product of any kind, good for 180 days from the date of issuance, provided that the Class Member provides proof of purchase or provided that proof of purchase is verifiable through GameStop's records or (2) a $5 payment and a $10 GameStop store credit towards the purchase of a used product of any kind, good for 180 days from the date of issuance, without providing proof of purchase.  (Settlement Agreement ¶ 1(a)-(b)).  Further, for a period of two years, Gamestop will:  (1) in its California stores, post "shelf talkers" in the used game sections advising consumers that certain downloadable content and online features may require additional purchase; (2) in its California stores, place "counter mats" advising consumers that certain downloadable content and online features may require additional purchase; and (3) place a disclaimer on its website, in the Pre-Owned Games section, advising California customers that "Certain Downloadable Content and Online Features May Require an Additional Purchase."  (Settlement Agreement ¶ 2(a)-(c).)  Like the "net monetary recovery" test, a pragmatic assessment of whether plaintiffs realized their litigation objectives confirms that Plaintiffs are entitled to a fee award under the CLRA as prevailing plaintiffs.

## 2.    The Private Attorneys General Statute Provides for Attorneys' Fees

Plaintiffs are also entitled to a fee award under California's private attorney general statute, Cal. Code Civ. Proc. § 1021.5.  Under this statute, the court may award attorney's fees to a "successful party" in any action that "has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

The fundamental objective of the statute is "to encourage suits enforcing public policies by providing substantial attorney fees to successful litigants in such cases." *Graham v. DaimlerChrysler Corp*., 34 Cal. 4th 553, 565 (2004).  In the context of California's private attorney general statute, the term "successful party" is synonymous with the term "prevailing party" used in the CLRA and other statutes, and requires only that the plaintiff achieve its litigation objectives, whether by judgment, settlement, or other means. *Id.* at 576-77.  "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefits of the parties sought in bringing suit." *Lyons v. Chinese Hospital Assn.*, 136 Cal. App. 4th 1331, 1346 (2006) (quoting *Maria P. v. Riles*, 43 Cal. 3d 1281, 1292 (1987)).  For the same reasons previously discussed, Plaintiffs and the class satisfy this standard.

Plaintiffs also satisfy the other criteria for a fee-shifting award under the private attorneys general statute.  The action conferred a significant benefit on a large class of persons by providing monetary and prospective relief to potentially thousands of Class Members.  The action also conferred a significant benefit on the public by enforcing important consumer protection rights and discouraging similar unfair and deceptive treatment of consumers.  *See Graham*,  34 Cal.4th at 578 ("It is well settled that attorney fees under section 1021.5 may be awarded for consumer class action suits benefiting a large number of people.").

The necessity and financial burden of private enforcement make an award appropriate.  Without the incentive of an attorneys' fees award, Plaintiffs could not have afforded to hire experienced counsel to pursue this case, given the amount of their individual claims.  *See Ryan v. California Interscholastic Federation*, 94 Cal. App. 4th 1033, 1044 (2001) ("As to the necessity and financial burden of private enforcement, an award is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words,

MOTION FOR ATTORNEYS' FEES AND COSTS

where the burden of pursuing the litigation is out of proportion to the plaintiff's individual stake in the matter.").  Finally, this is not a case where fees should in the interest of justice be paid out of class members' recovery.  The incentive of a Court-awarded fee was necessary in this case because there is no fund from which Class Counsel could be awarded those costs nor was there ever a reasonable expectation that a common fund would be generated by this litigation.

   **C.    California Law Prescribes A Lodestar/Multiplier Method Of Calculating A Reasonable Fee.**

   In cases that involve fee-shifting, in which the responsibility to pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar/multiplier method.  *In re Consumer Privacy Cases,* 175 Cal. App. 4th 545, 556-557 (2009); *see also Ketchum v. Moses,* 24 Cal. 4th 1122, 1137 (2001) ("[T]he lodestar adjustment method, including discretion to award fee enhancements, is well established under California law.")  California's lodestar/multiplier method is a two-step process of fee calculation under which the Court first determines a lodestar value for the fees by multiplying the time reasonably spent by Plaintiffs' counsel on the case by a reasonable hourly rate.  *In re Consumer Privacy Cases,* 175 Cal. App. 4th at 556-557.  The Court may then enhance or reduce the lodestar by applying a multiplier to take into account the contingent nature and risk associated with the action, as well as other factors such as the degree of skill required and the ultimate success achieved.  *Id.*; *Ketchum v. Moses,* 24 Cal. 4th at 1130, 1137 (holding that Court of Appeal erred when it followed *City of Burlington v. Dague*, 505 U.S. 557 (1992) and concluded that it lacked authority to enhance a prevailing party's lodestar).  The value of the multiplier lies within the Court's sound discretion.   The Ninth Circuit has indicated that district courts awarding attorneys' fees pursuant to a California fee-shifting statute are authorized to

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

apply risk multipliers.  *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d at 1478-79 (9th Cir. 1995) (affirming multiplier of 2.0 on the ground that "California law permits such enhancements under state fee-shifting statutes."). California courts have approved fee awards with multipliers of 2 and even higher. *See, e.g., Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher."); *City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78 (1988) (affirming a 2.34 multiplier without remand); and *Edgerton v. State Pers. Bd.*, 83 Cal. App. 4th 1350, 1363 (2000) (applying a 1.5 multiplier).

> **D.    Class Counsel's Lodestar Is Reasonable and Should Be Approved**

Class Counsel's hours are to be multiplied by a "reasonable hourly rate" to generate the lodestar figure.  *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556.  In determining an appropriate hourly rate, the Court should look to apply rates commensurate with the "hourly prevailing rates for private attorneys in the community conducting noncontingent litigation of the same type." *Ketchum v. Moses*, 24 Cal. 4th at 1133.

Initiative's hourly rates for associates range from $275 to $445 per hour. These rates are comparable to those charged by the Los Angeles office of Sheppard Mullin Richter & Hampton ("Sheppard Mullin"), a prominent law firm with a significant wage and hour class action defense practice.  Sheppard Mullin's associate rates range from $275 to $635 an hour.  *See* 2011 Nationwide Sampling of Law Firm Billing Rates – The National Law Journal, December 19, 2011.  (Declaration of G. Arthur Meneses ["Menses Decl."], Ex. A.)  Initiative's associate hourly rates are also comparable to those of Manatt, Phelps & Phillips ("Manatt Phelps"), a well-known law firm based in Los Angeles.  Manatt Phelps' average associate hourly rate is $464.  *Id.*  Initiative's average associate rate is $353.  Initiative's senior counsel and partner hourly rates range from $470 to

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1   $695.  These rates are comparable to those charged by the Los Angeles offices of

2   Sheppard Mullin ($505 to $860) and Manatt, Phelps ($540 to $850).

3        Moreover, Initiative's rates are comparable to those judicially approved

4   for other plaintiff's firms.  *See*, *e.g.*, *Faigman v. AT&T Mobility LLC*, 2011 U.S.

5   Dist. LEXIS 15825, * 2 (N.D. Cal. Feb. 15, 2011) (approving hourly rates of

6   $650 an hour for partner services and $500 an hour for associate attorney

7   services); *Richard v. Ameri-Force Mgmt. Servs., Inc.* (San Diego Super. Ct.,

8   August 27, 2010, No. 37-2008-00096019) ($695 to $750 an hour for partners;

9   $495 an hour for associates); *Barrera v. Gamestop Corp.* (C.D. Cal. Nov. 29,

10   2010, No. CV 09-1399) ($700 an hour for partners; $475 an hour for associates);

11   and *Anderson v. Nextel Retail Stores, LLC* (C.D. Cal. June 20, 2010, No. CV 07-

12   4480) ($655 to $750 an hour for partners; $300 to $515 an hour for associates).

13        While adjusting its rates to track annual market increases, Initiative's rates

14   have steadily remained reasonable and competitive, and have been consistently

15   approved by federal and state courts over the past several years.  *See, e.g.,*

16   *Acheson v. Express LLC* (Santa Clara Super. Ct. No. 109CV135335) (Sept. 3,

17   2011) ("Class Counsel have justified the propriety of their request for attorneys'

18   fees, and the fair value of their services, by reference to their lodestar, which the

19   court finds to be the product of reasonable attorney rates and hours billed to the

20   litigation."); *LaGaisse v. 20 20 Powervision* (Riverside Super. Ct. No. RIC

21   528973) (Apr. 12, 2011) ("[C]lass Counsel have justified the appropriateness of

22   such an award by way of their lodestar cross-check analysis, demonstrating to

23   the Court's satisfaction that the attorney rates and hours billed to the litigation

24   were reasonable."); *Gutierrez v. Lowe's HIW, Inc.* (Stanislaus County Super. Ct.

25   No. 657474) (July 8, 2011); *Ethridge v. Universal Health Servs.*, (L.A. Super.

26   Ct. No. BC391958) (May 27, 2011); *Aguiar v. Cingular Wireless LLC et al.*

27   (C.D. Cal. No. 05-02907) (Mar. 3, 2011); *Burrows v. Combined Ins. Co. of Am.*

28   (E.D. Cal. No. 08-01752) (Dec. 15, 2010); *Berrymon v. St. Vincent Med. Ctr.*

(L.A. Super. Ct. No. BC391114) (Jun. 28, 2010); *Mares v. BFS Retail & Commercial Operations, LLC* (L.A. Super. Ct. No. BC375967) (Mar. 1, 2010); *Padovani v. Citicorp Inv. Servs., Inc.* (C.D. Cal. No. 07-00113) (Jan. 23, 2009); *Simpson v. e\*Trade* (C.D. Cal. No. 06-00156) (June 2, 2008); *Brannon v. Midland Credit Mgmt., Inc.* (San Diego Super. Ct. No. GIC 864722) (June 13, 2007); and *Sunio v. Marsh* (L.A. Super. Ct. No. BC328782) (Apr. 28, 2006).

B&B's hourly rates for associates on this matter range from $275 to $495 and its hourly rates for senior counsel and partners range from $495 to $695. (Declaration of Roland Tellis ["Tellis Dec1."] ¶ 10.)  Such rates are commensurate with the prevailing hourly rates for attorneys in the Los Angeles community who represent clients in non-contingent type complex litigation.  (*Id.*)  Indeed, the B&B lawyers who represented the Class in this case were formerly associates and partners at the Los Angeles office of the international law firm of Bingham McCutchen LLP, and their hourly rates for similar non-contingent type complex litigation were in excess of their current B&B hourly rates.  (*Id*. ¶ 2; Declaration of Mark Pifko ["Pifko Decl."] ¶ 2.)  B&B's hourly rates are also commensurate with the firm's experience and expertise in complex class actions.  B&B is one of the largest national trial firms in the country, with an unprecedented track record in successfully litigating class action, products liability, mass tort, and complex litigation cases throughout the United States for over 30 years.  (Tellis Decl. ¶ 3.)  Since it was founded in 1977, B&B has garnered national acclaim for its work in protecting clients from corporate misconduct:

- B&B has been named to The National Law Journal's "Plaintiffs' Hot List" of exemplary plaintiffs' firms almost every year since the award's inception (2002-2006, 2008, and 2011.);
- B&B is one of only four law firms chosen to serve both on the Plaintiffs' Executive Committee and on the Plaintiffs' Steering

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

Committee (PSC) of the Multi-District Litigation (MDL) in the Gulf Oil Spill litigation;

- In 2009, B&B was a finalist for the Public Justice Trial Lawyers of the Year Award for its work in mass tort and product liability litigation;

- In 2007, B&B lawyers were among 14 attorneys nationwide to be honored by the American Association for Justice in recognition of their commitment to the legal profession and their efforts to improve the civil justice system;

- In 2006, B&B attorneys received the Trial Lawyer of the Year award from Trial Lawyers for Public Justice for their combined work on two cases spanning 21 years and involving over 1600 plaintiffs;

- In 2004, American Lawyer named the firm one of the sixteen most successful plaintiffs' firms in the country; and

- B&B has been a longtime supporter of Public Justice, donating substantial attorney time to the cases spearheaded by the organization, including litigation arising from the damage caused by the Exxon Valdez oil spill in the Prince William Sound of Alaska.

(Tellis Decl. ¶ 9.)

Class Counsel's fee application seeks compensation for 1287 hours they spent litigating this case over the few years.  Multiplying the total attorney hours by the applicable hourly rates yields a total lodestar of approximately $655,213. Accordingly, a "negative multiplier" of approximately 0.34 is needed to adjust the lodestar downward to match negotiated fees (less litigation costs).

**E.    Additional Factors Under California Law Support Awarding the Agreed-Upon Class Counsel Fee Award**

    **1.    California Case Law Authorizes Courts to Consider Additional Factors in Determining the Reasonableness of a Fee Request**

Although the lodestar is the primary reference for the appropriateness of a fee request, courts also consider the difficulty and complexity of the questions involved, and the skill displayed in presenting them and the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award. *See Serrano v. Priest*, 20 Cal. 3d 25 (1977). In addition to the *Serrano* factors, the Court may consider the following factors: (i) the results achieved on behalf of the Class; (ii) Class Counsel's experience, reputation, and ability; and (iii) Class Counsel's significant investment of time and resources into the litigation. *See Ketchum v. Moses*, 24 Cal. 4th at 1139; *Fracasse v. Brent*, 6 Cal. 3d 784, 792 (1972); *Cundiff v. Verizon Cal., Inc.*, 167 Cal. App. 4th 718, 724 (2008); *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 45-46 (2000).

Each of the factors supplemental to the lodestar favors approval of the negotiated fees.

    **2.    The Attorneys' Fees Are Supported by the Complexity of the Litigation and the Risk Assumed by Class Counsel**

Plaintiffs believe they have a strong case on the facts, as reflected by the strength of the Settlement. Plaintiffs believe that they could have successfully demonstrated that Gamestop misled consumers into believing that certain titles of used videogames came with free downloadable content when in fact they did not, and that the failure to disclose this information amounted to a material misrepresentation that affected consumers' purchasing decisions.

Nevertheless, Plaintiffs' counsel are experienced in consumer class

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

litigation and are therefore cognizant of the risks of continued litigation.  For example, Gamestop likely would have argued that there was no material misrepresentation because it is common knowledge in the industry that consumers who purchase used games from retail stores like GameStop, rather than from an online marketplace such as eBay.com, do not get these additional downloadable features, but must pay for them separately.  Further, Gamestop would have argued that it is a *non sequitor* to claim Class Members would not have purchased the used videogames had they known about the added expense for downloadable content.  On the latter point, GameStop may have also argued that Class Members were not injured by the omissions because if they were not pleased with their purchases, they could have simply returned the videogames for a full refund within seven days.  It follows that Gamestop would have argued that individualized issues of fact; i.e., whether consumers would have purchased the used videogames if they had known that the purchase did not include downloadable content, would have predominated over common issues and would therefore have precluded class certification.

If the parties had been unable to resolve this case through settlement, the litigation could have been even more expensive and lengthy.  The parties would have needed additional time to finish discovery, including taking depositions of Gamestop's personnel and class representatives.  This discovery would have been followed by a motion for class certification, a Rule 23(f) request (if a class had been certified), a potential motion for summary judgment, and then trial.  It is therefore highly unlikely that the case would have gone to trial before late 2012, with post-trial activities likely to follow.

On this point, one district court observed:

> [A]n evaluation of the benefits of settlement must also be tempered by the recognition that any compromise involves concessions on the part of all the settling parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning

of highest hopes.'" [*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982)] . . . Had [Plaintiffs] continued to litigate, they would have faced a host of potential risks and costs, including the potential for successful attacks on the pleadings, high costs associated with lengthy and complex litigation, potential loss on summary judgment, and risks and costs associated with trial, should the case progress that far. Indeed, even a favorable judgment at trial may face post-trial motions and even if liability was established, the amount of recoverable damages is uncertain. The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation. See *Id*. at 625. Indeed, the Ninth Circuit, in affirming a district court's approval of a settlement of a derivative action noted that the "odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." [*Principe v. Ukropina (In re Pacific Enters. Sec. Litig.)*, 47 F.3d 373, 378 (9th Cir. 1995).

*In re Nvidia Derivatives Litigation*, 2009 U.S. Dist. LEXIS 24973, *16-17 (N.D.Cal. Dec. 22, 2008).

By securing the relief now, the settlement prevents Class Members from incurring further damages and avoids the uncertainty and risks of protracted litigation.

Given the favorable terms of the settlement and the manner in which these terms were negotiated, the proposed settlement should be viewed as a fair, reasonable, and adequate compromise of the issues in dispute.

### 3. The Attorneys' Fees Are Supported by Class Counsel's Representing the Class on a Contingency Basis

Providing attorneys who represent clients under contingent-fee agreements a larger fee than the market-value of their services helps to assure adequate representation for plaintiffs unable to afford accomplished attorney hourly rates. *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th at 580 ("[A] lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions."); *Ketchum v. Moses*, 24 Cal. 4th at 1132 ("[A] contingent fee

contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable.").

California courts recognize that "the experience of the marketplace indicates that lawyers generally will not provide legal representation on a contingent basis unless they receive a premium for taking that risk." *Ketchum*, 24 Cal. 4th at 1136 (quoting Berger, Court Awarded Attorneys' Fees:  What is Reasonable?" (1977) 126 U. Pa. L. Rev. 281, 324-25.)  "Given the unique reliance of our legal system on private litigants to enforce substantive provisions of law through class and derivative actions . . . [attorneys] must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it will otherwise be economic for defendants to increase injurious behavior." *Lealao*, 82 Cal. App. 4th at 47.

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases . . ." *Chemical Bank v. City of Seattle*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Contingent fees that may far exceed the market value of the services if rendered on a "non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *Id.*  If this bonus methodology did not exist, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Id.* at 1300.

### 4.      The Attorneys' Fees Are Supported by the Results Achieved on Behalf of the Class

As explained throughout this Memorandum, Class Counsel negotiated valuable relief, both prospective and monetary, for the Class.  As to prospective relief in particular, Gamestop will:  (1) in its California stores, post "shelf

MOTION FOR ATTORNEYS' FEES AND COSTS

talkers" in the used game sections advising consumers that certain downloadable content and online features may require additional purchase; (2) in its California stores, place "counter mats" advising consumers that certain downloadable content and online features may require additional purchase; and (3) place a disclaimer on its website, in the Pre-Owned Games section, advising California customers that "Certain Downloadable Content and Online Features May Require an Additional Purchase."  This prospective relief inures to the benefit not only of Class Members but to members of the public at large.

### 5.    The Attorneys' Fees Are Supported by Class Counsel's Experience, Reputation, and Skill

Initiative's lawyers hail from the nation's top law schools, and many began their careers at prominent, national firms before applying their knowledge and skills to serving plaintiffs and the public interest.  This expertise is reflected in the academic awards, federal clerkships, law review honors, and critical pro bona contributions that Initiative's lawyers have achieved.  Initiative has one of the largest California class action practices exclusively dedicated to representing plaintiffs.  Initiative's lawyers have won over twenty contested class certification motions, and have brought meaningful relief to workers and consumers in more than sixty class settlements. (See generally *Meneses* Decl.)

Raul Perez, a partner at Initiative, received his law degree in 1994 from Harvard Law School. Over the past 17 years, Mr. Perez has tried several cases to verdict.  (Meneses Decl. ¶ 7.)  Prior to joining Initiative, Mr. Perez was a partner at Pond North LLP, and at Liner Grode Stein Sunshine Regienstreiff & Taylor LLP.  (*Id.*)  Since joining Initiative, Mr. Perez has been responsible for managing wage and hour and consumer class actions in varying stages of litigation.  (*Id.*)

Gene Williams, Senior Counsel, received his law degree in 2000 from the UCLA School of Law. Mr. Williams has practiced with the firms of Kirkland & Ellis LLP and Browne Woods George LLP, where he handled all aspects of

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

litigation on an array of cases.  (Meneses Decl. ¶ 8.)  Mr. Williams also has chaired multiple trials, including first chairing a multi-million dollar federal jury trial relating to an entertainment contract dispute.  (*Id*.)  Since joining Initiative in 2009, Mr. Williams has managed two litigation teams responsible for prosecuting wage and hour and consumer class actions.  (*Id*.)  Mr. Williams has successfully resolved over twenty cases in just over two years at Initiative, obtaining nearly $40 million for class members.

Arnab Banerjee, Associate, received his law degree in 2007 from USC Law School.  (Meneses Decl. ¶ 9.)  Mr. Banerjee began practicing at Latham & Watkins, where he worked in various aspects of business litigation and white collar litigation.  (*Id*.)  Prior to working at Initiative, Mr. Banerjee also worked at a boutique employment litigation firm started by former partners at Latham & Watkins and Paul Hastings.  (*Id*.)  Since joining ILG in 2010, Mr. Banerjee has worked on all stages of litigation for wage and hour and consumer class actions.

B&B is a leader in complex litigation cases which include, *inter alia*, products liability claims, consumer cases, other occupational and environmental exposures, air pollution, water contamination cases, insurance litigation, Qui Tarn, class actions, antitrust cases, and commercial litigation.  (Tellis Dec1. ¶ 9.) Mr. Tellis' and Mr. Pifko's experience exemplifies the depth and breadth of resources that B&B, provides for its clients and to the class.  Since it was founded in 1977, B&B has garnered national acclaim for its work in protecting those victimized by corporate misconduct.  (*Id*.)

Mr. Tellis has been an attorney for sixteen years, and a shareholder at B&B since October 2010.  (Tellis Decl. ¶ 2.)  Mr. Tellis co-manages the Los Angeles Office of B&B.  (*Id*.)  Prior to joining B&B, Mr. Tellis was a partner in the international law firm of Bingham McCutchen.  (*Id*.)  Mr. Tellis' practice focuses on complex litigation and class actions involving consumer disputes, fraud, securities, environmental matters, and business torts.  (*Id*.)

Mr. Tellis has represented parties in numerous consumer class actions. Mr. Tellis currently serves as class counsel in the certified class action concerning issues of fraud in connection with the sale of Brazilian Blowout hair products. *See In Re Brazilian Blowout Litigation* (C.D. Cal. Case No. 2:10-cv-08452). Other recent class action cases in which Mr. Tellis is counsel include: *Delacruz v. Cytosport, Inc.* (N.D. Cal. Case No. 4:11-cv-03532) (putative class action concerning false advertising, fraud, and misrepresentations regarding dietary supplement products); and *Brad Aarons et al. v. BMW of North America, LLC et al.* (C.D. Cal. Case No. 2:11-cv-07667-PSG-CW) (putative class action concerning premature transmission failure in MINI vehicles). Mr. Tellis also serves as Co-Lead Counsel for plaintiffs in *In re Alexia Foods, Inc. Litigation* (N.D. Cal. Case No. 4:11-cv-06119) (putative class action concerning false advertising, fraud, and misrepresentations concerning frozen food products). (Tellis Decl. ¶ 4.) Additional class action cases Mr. Tellis has been involved in include: *Clark v. NeilMed Pharmaceuticals* (S.D. Cal. Case No. 3:10-cv-01453) (claims for false designation of origin and false labeling); *Poliner v. Gateway Computers* (Los Angeles Super. Ct. Case No. BC308923) (alleging failure to properly account for tax rebates on computer sales); and *Kim v. Classic Distributing* (alleging failure to properly account for monetary credits and California Redemption Value on returns of alcohol beverages). (Tellis Decl. ¶ 5.)

Mr. Tellis has served on the Board of Governors of the Association of Business Trial Lawyers Los Angeles Chapter, and is currently a Central District Lawyer Representative to the Ninth Circuit Judicial Conference. (Tellis Decl. ¶ 7.) Mr. Tellis is currently the Co-Chair of the Central District Court's Attorney Settlement Officer Panel Committee. (*Id*.) Mr. Tellis also serves as a program chair and faculty member for the Practicing Law Institute's "Taking and Defending Depositions" program. (*Id*. at ¶ 8.)

Mr. Pifko joined B&B's Los Angeles office in 2011, where he represents clients in complex and class action litigation matters.  (Pifko Decl. ¶ 2.)  Mr. Pifko's practice focuses on cases involving false advertising, fraud, and scientific and technical disputes.  (*Id.*)  Mr. Pifko has been on both the prosecution and defense sides of more than fifty class action lawsuits and other complex legal matters concerning a variety of consumer goods, including food products, consumer electronics, dietary supplements, vehicles, software and other items. (*Id.*)

Mr. Pifko serves as Co-Lead Counsel for plaintiffs in *In re Alexia Foods, Inc. Litigation* (N.D. Cal. Case No. 4:11-cv-06119) (putative class action concerning false advertising, fraud, and misrepresentations regarding frozen food products).  (*Id.* ¶ 3.)  Additionally, Mr. Pifko is currently counsel in *Delacruz v. Cytosport, Inc.* (N.D. Cal. Case No. 4:11-cv-03532) (putative class action concerning false advertising, fraud, and misrepresentations regarding dietary supplement products), *Brad Aarons et al. v. BMW of North America, LLC et al.* (C.D. Cal. Case No. 2:11-cv-07667-PSG-CW) (putative class action concerning premature transmission failure in MINI vehicles), and other noteworthy complex and class actions Mr. Pifko has had significant involvement in include: *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008 (S.D. Cal. 2009) (class action regarding major restaurant system's alleged violation of California's gift card laws*); Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798 (2007) (allegations that progesterone cream products required warnings under California consumer laws and Proposition 65); *Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009) (class action alleging false advertising concerning yogurt products); and *In re Light Cigarettes Marketing and Sales Practices. Litig.*, 652 F. Supp. 2d 1379 (MDL No. 2068) (class action alleging false advertising concerning light cigarettes).  (*Id.*)

Finally, Mr. Pifko has published several articles concerning class actions

MOTION FOR ATTORNEYS' FEES AND COSTS

and consumer laws. (*Id.* ¶ 4.) Relevant articles include: "Game On!," *Daily Journal* (March 14, 2011), "Getting What You Paid For," *California Lawyer Magazine* (February 2010); "California District Attorneys Enforce Gift Card Law Against Major Retailer, Highlighting Increasing Government Enforcement Trend," Arnold & Porter LLP Advisory (August 2009); "California Supreme Court Rules Consumers Need Actual Injury for CLRA Claim," Arnold & Porter LLP Advisory (February 2009); and "AlIPA Members Fight California 'Shakedown' Lawsuit: Potential Industry-wide Benefits," American Herbal Products Association (APHA) Report (October 2006). (*Id.*)

In sum, as discussed above, the attorneys representing Class Members are highly experienced.

## F. The Requested Award of Attorneys' Fees Is Supported by Class Counsel's Significant Investment of Time and Resources in the Action

Class Counsel's fee application seeks compensation for 1287 hours they spent litigating this case over the past few years. To obtain relief for class members, Class Counsel were required to meet and overcome constant resistance from a well-financed corporate opponent represented by highly experienced defense counsel. The following summary illustrates how much work went into this litigation.

In addition to time dedicated toward formal discovery, Class Counsel spent many hours researching Gamestop's used videogame merchandise to determine which titles advertised downloadable content. Class Counsel also retrieved copies of advertisements circulated during the class period and videogame packaging to determine whether Gamestop provided consumers with a disclaimer about the downloadable content.

In an effort to interact with members of the prospective Class, Class Counsel developed a website to provide prospective Class Members with

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

information about the lawsuit and to solicit information and evidence from the key witnesses to Gamestop's misleading business practices. As a result of this outreach, Class Counsel interviewed Class Members about whether they expected downloadable content to be included in their purchase of used videogames and whether Gamestop had ever explained in writing or through other media that such content was not included with their purchase of used videogames. Class Counsel also interviewed store employees to determine how Gamestop instructed its personnel to address the subject of downloadable content to customers.

To better appreciate what consumers see and are told when purchasing the used videogames, Class Counsel also personally inspected certain Gamestop retail stores to see first-hand how used videogames were marketed and how the topic of downloadable content is broached.

Class Counsel also reviewed confidential sales data informally produced by Gamestop which enabled Class Counsel to better assess Gamestop's exposure for Plaintiffs' claims and to determine an appropriate range of recovery for the settlement class.

Class Counsel spent a considerable amount of time and resources negotiating the Settlement. On March 3, 2011, the Class Counsel participated in a day-long mediation session with the Honorable Judge Edward A. Infante (Ret.) at JAMS in San Francisco, California. (Pifko Decl. ¶ 5.) Class Counsel continued to negotiate with counsel for Gamestop over the next several months. (*Id.*) Additionally, on October 26, 2011, Class Counsel participated in a judicially-supervised, all-day settlement conference with Chief Magistrate Judge Maria-Elena James. (*Id.*) At the October 26 settlement conference, Class Counsel negotiated a partial settlement of the case. (*Id.*) Class Counsel attended a second settlement conference before Judge James on November 14, 2011. (*Id.*) The parties did not resolve all remaining settlement terms at the November 14

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

settlement conference. (*Id.*) As a result, on November 15, Judge James presented the parties with a "mediator's proposal" that addressed the remaining terms. (*Id.*) On November 17, the parties accepted Judge James' proposal. (*Id.*)

### G. The Requested Class Counsel Cost Recovery Is Reasonable and Should Receive Final Approval

Class Counsel are also entitled to reimbursement of their litigation costs. *See Bussey v. Affleck*, 225 Cal. App. 3d 1162, 1166 (1990); s*ee also*, *e.g.*, *In re United Energy Corp. Sec. Litig.*, No. MDL 726, 1989 U.S. Dist. LEXIS 19146, at *16 (C.D. Cal. Mar. 9, 1989) (approving $71,000 in costs for "filing fees, postage, telephone bills, photocopying, legal research assistance, deposition costs, witness fees, and similar items."). Class Counsel incurred and advanced $28,789 in reasonably incurred costs on court fees, filing costs, postage and delivery, mediation, etc., all costs that are reimbursable.

## III.   CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' request for award of attorneys' fees and costs in the sum of $250,000.

Dated: June 13, 2012                    INITIATIVE LEGAL GROUP APC

                                        By: _____
                                        Raul Perez
                                        Gene Williams
                                        Arnab Banerjee

                                        BARON & BUDD, P.C.
                                        Roland Tellis
                                        Mark Pifko

                                        Attorneys for Plaintiffs James Collins, Matthew Proctor, and Danoby Ortiz